**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**TERUMI OMORI,**

                          **Plaintiff,**                   5:13-cv-1266
                                                                   (GLS)

              v.

**CAROLYN W. COLVIN,** Acting
Commissioner of Social Security,

                          **Defendant.**
_____

**APPEARANCES:**                         **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Olinsky Law Group                   HOWARD D. OLINSKY, ESQ.
300 S. State Street
Suite 420
Syracuse, NY 13202

**FOR THE DEFENDANT:**
HON. RICHARD S. HARTUNIAN     SANDRA M. GROSSFELD
United States Attorney              Special Assistant U.S. Attorney
100 South Clinton Street
Syracuse, NY 13261

Steven P. Conte
Regional Chief Counsel
Social Security Administration
Office of General Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278

**Gary L. Sharpe**
**Chief Judge**

# MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff Terumi Omori challenges the Commissioner of Social Security's denial of Child's Insurance Benefits (CIB) and Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3). (Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering Omori's arguments, the court affirms the Commissioner's decision and dismisses the complaint.

## II. Background

On November 12, 2010, Omori filed applications for CIB and SSI under the Social Security Act ("the Act"), alleging disability since January, 3, 1988. (Tr.[1] at 63-64, 141-53.) After his applications were denied, (*id.* at 66-77), Omori requested a hearing before an Administrative Law Judge (ALJ), which was held on June 1, 2012, (*id.* at 29-62, 91-94). On June 15, 2012, the ALJ issued an unfavorable decision denying the requested benefits which became the Commissioner's final determination upon the Social Security Administration Appeals Council's denial of review. (*Id.* at 1-

---

[1] Page references preceded by "Tr." are to the Administrative Transcript. (Dkt. No. 8.)

5, 29-62.)[2]

Omori commenced the present action by filing his complaint on October 11, 2013 wherein he sought review of the Commissioner's determination. (Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (Dkt. Nos. 7, 8.) Each party, seeking judgment on the pleadings, filed a brief. (Dkt. Nos. 10, 13.)

### III. Contentions

Omori contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence. (Dkt. No. 10 at 15-25.) Specifically, Omori claims that the ALJ erred in: (1) weighing the medical opinions of record; (2) evaluating his credibility; and (3) posing an incomplete hypothetical to the vocational expert (VE) at step five of the sequential evaluation. (*Id.*) The Commissioner counters that the appropriate legal standards were used by the ALJ and her decision is also supported by substantial evidence. (Dkt. No. 13 at 7-14.)

### IV. Facts

The court adopts the parties' undisputed factual recitations. (Dkt. No.

---

[2] Although Omori alleged his disability began on his date of birth, he became eligible for benefits when he attained age eighteen. *See* 20 C.F.R. § 404.350(a)(5). Thus, the ALJ only considered the period from January 2, 2006 until the date of her decision. (Tr. at 11.)

3

10 at 2-14; Dkt. No. 13 at 1.)

## V. Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g)[3] is well established and will not be repeated here. For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008). In addition to showing a disability under the five-step sequential analysis, a claimant seeking CIB must also be the child of an insured person who is entitled to old-age or disability benefits or who has died, be dependent on the insured, be unmarried, and demonstrate that her disability began before age twenty-two. *See* 20 C.F.R. § 404.350(a).

## VI. Discussion

### A. Weighing Medical Opinions

Omori first argues that the ALJ erred in weighing the opinions of treating physicians Rob Feldman and Anthony Blumetti as well as

---

[3] 42 U.S.C. § 1383(c)(3) renders section 405(g) applicable to judicial review of SSI claims.

4

consultative examiner Muhammad Toor. (Dkt. No. 10 at 15-23.) Specifically, Omori takes issue with the ALJ assigning no weight to the opinion of Dr. Blumetti that Omori would be "off task" more than twenty percent of the workday due to his demonstrated "difficulties . . . relative to aspects of executive function, receptive and expressive attention, processing ability and speed, and overall cognitive efficiency combined with his current emotional state and possible side effects from anticonvulsant medication." (*Id.* at 16-19.) Further, Omori contends that the ALJ erred in discounting the opinions of both Drs. Feldman and Blumetti that he suffers marked limitations in the area of social interaction. (*Id.* at 19-22.) Additionally, Omori argues that the ALJ erred in failing to adopt the portion of Dr. Toor's opinion concerning Omori's limitations resulting from his history of asthma. (*Id.* at 22-23.) The Commissioner counters, and the court agrees, that the ALJ properly weighed the opinions before her based on substantial evidence in the record. (Dkt. No. 13 at 7-11.)

Medical opinions, regardless of the source, are evaluated by considering several factors outlined in 20 C.F.R. § 404.1527(c). Controlling weight will be given to a treating physician's opinion that is "well-supported

5

by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *Id.* § 404.1527(c)(2); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). Unless controlling weight is given to a treating source's opinion, the ALJ is required to consider the following factors in determining the weight assigned to a medical opinion: whether or not the source examined the claimant; the existence, length and nature of a treatment relationship; the frequency of examination; evidentiary support offered; consistency with the record as a whole; and specialization of the examiner. *See* 20 C.F.R. § 404.1527(c). The ALJ must provide "'good reasons' for the weight given to the treating source's opinion." *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (citations omitted). "Nevertheless, where the evidence of record permits [the court] to glean the rationale of an ALJ's decision," it is not necessary that the ALJ "have mentioned every item of testimony presented to h[er] or have explained why [s]he considered particular evidence unpersuasive or insufficient to lead h[er] to a conclusion of disability." *Id*. (internal quotation marks and citation omitted).

      Here, Dr. Blumetti completed a Medical Source Statement in

November 2011 indicating that Omori was "markedly" limited[4] in his ability to interact with the public, supervisors, and co-workers, and understand, remember, and carry out complex instructions. (Tr. at 861-62.) According to Dr. Blumetti, Omori was "moderately" limited[5] in his ability to respond to usual work situations and changes in a routine work setting, and "mildly" limited[6] in his ability to understand, remember, and carry out simple instructions, and make judgments on simple work-related decisions. (*Id.*) The ALJ gave this opinion some weight, agreeing with Dr. Blumetti that Omori was limited to simple and unskilled work, but finding that Omori's ability to interact with others was not markedly limited. (*Id.* at 20.) The ALJ explained that, although he is socially awkward, Omori generally gets along with others and does not avoid going out in public, as evinced by his attendance at college and at gaming events at the mall. (*Id.*) On the other hand, the ALJ gave "no weight" to the June 2012 letter submitted by Dr. Blumetti, suggesting that, due to his impairments, Omori would be off task

---

[4] A marked limitation was defined as a "serious limitation" causing a "substantial loss in the ability to effectively function." (Tr. at 861.)

[5] A "moderate" limitation was defined as "more than a slight limitation . . . but the individual is still able to function satisfactorily." (Tr. at 861.)

[6] A "mild" limitation was defined as "a slight limitation . . . but the individual can generally function well." (Tr. at 861.)

7

substantially more than twenty percent of the work day. (*Id.* at 20, 909.)
The ALJ reasoned that this letter was "not an opinion of the claimant's functional capacity," unsubstantiated, and inconsistent with the evidence of record. (*Id.* at 20.)

For many of the same reasons, the ALJ gave "no weight" to the opinion of Dr. Feldman that Omori was "markedly" limited in his ability to make simple work-related decisions, interact with the public, co-workers, and supervisors, and respond to usual work situations and changes in a routine work setting. (*Id.* at 19-20, 848-51.) The ALJ found that Dr. Feldman's opinion was "inconsistent with the evidence of record which show[ed] that [Omori] retains the capacity to perform unskilled and low-stress tasks," and "gets along with others generally and is not afraid to go out in public." (*Id.* at 20.)[7] The ALJ considered Omori's daily activities including his ability to prepare food, shop, shovel snow, watch television, play video games, use the computer, paint toy models, and attend a gaming club once a month. (*Id.* at 44-45, 47-50, 769.) The ALJ also noted

---

[7] Ultimately, the ALJ determined that Omori retained the residual functional capacity (RFC) to work at all exertional levels but only involving simple, routine, and repetitive tasks. (Tr. at 16.) Further, the ALJ concluded that Omori was limited to work that is essentially isolated with only occasional supervision and low stress, meaning no production paced work, only occasional changes to the work setting, and requiring only occasional use of judgment, that does not involve exposure to hazards or moving machinery. (*Id.*)

8

that Omori was able to graduate from high school, obtain a two-year college degree, and had begun a vocational training program. (*Id.* at 36, 38, 895-97.)

In addition to the above cited evidence regarding Omori's admitted activities, the ALJ relied on the report of consultative examiner Jeanne Shapiro. (*Id.* at 766-70.) Upon examination, Dr. Shapiro found Omori's manner of relating and social skills to be marginally adequate, but he appeared "somewhat shy and reserved." (*Id.* at 768.) At this time, Omori's personal hygiene and grooming was good, motor behavior was normal, eye contact was appropriate, and speech was fluent and clear. (*Id.*) Further, Omori's thought processes were coherent and goal directed, mood was neutral, and affect was congruent with his mood and of full range. (*Id.*) Upon testing, Omori's attention and concentration were intact, but his recent and remote memory were mildly to moderately impaired, and his intellectual functioning was estimated to be in the deficient range. (*Id.*) Based on this examination, Dr. Shapiro opined that Omori was capable of understanding and following simple directions, performing simple and some complex tasks with supervision and "perhaps some independently," attending to a routine and maintaining a schedule, and making some

9

appropriate decisions. (*Id.* at 769.) However, Dr. Shapiro explained that Omori may have difficulty consistently maintaining attention and concentration given his complaints of such difficulties, interacting with others, and adequately dealing with stress. (*Id.*)

It is important to note that the ALJ did not discount Dr. Blumetti's opinion wholesale, but rather adopted many of the limitations adduced by him in finding that Omori could perform only simple, routine, low-stress tasks that were "essentially isolated" from social interaction. (*Id.* at 16.) Further, although the court agrees with Omori that Dr. Blumetti's June 2012 letter opining that Omori would likely be off task more than twenty percent of the work day is, in fact, a functional assessment, (Dkt. No. 10 at 18), substantial evidence supports the ALJ's conclusion that Omori can maintain attention and concentration for simple unskilled work. Specifically, Omori's attention and concentration were intact on examination by Dr. Shapiro, and Omori was able to graduate high school and complete a two-year college program, albeit with accommodations for his learning disability. (Tr. at 36, 38.) Test results contained in Omori's education records indicate that his IQ is in the low average range and a Post-Secondary Exit Summary Report completed in June 2006 indicates

that Omori can understand simple directions and demonstrate mathematical application skills on grade level. (*Id.* at 364, 421, 462.) Omori testified that he can add and subtract, was "okay" being around others in school, and participates in a gaming club once a month that entails him playing a game for an entire day at the mall. (*Id.* at 43, 46, 49-50.) In 2010, Omori's former highschool resource teacher, Mary Kay Peters, completed a report and explained that his "attention to class work was often specific to the task at hand. If it was material that was difficult or did not peak his interest he would become distracted. His ability to attend [to tasks] improved during his junior and senior year." (*Id.* at 256.) Peters also rated Omori's ability to function in twelve areas related to attending and completing tasks.[8] (*Id.*) In her opinion, Omori suffered either "no problem" or merely a "slight problem" in ten areas, including the ability to focus long enough to finish assigned tasks and complete work accurately without careless mistakes. (*Id.*) Peters opined that Omori had an "obvious problem" in the remaining two areas. (*Id.*)

Additionally, Omori's education records support the ALJ's conclusion

---

[8] The form report Peters completed asked her to rate Omori in thirteen areas related to attending and completing tasks on a scale from one to five, with five indicating a "very serious problem." (Tr. at 254-61.) Peters failed to indicate a rating for Omori's ability to wait to take turns. (*Id.* at 256.)

11

that, although he had some difficulties interacting and relating with others, Omori is capable of occasional interaction with supervisors.  (*Id.* at 16.)  To that end, his 2005-2006 Individualized Education Program (IEP) indicated that Omori had "occasional difficulty communicating in social situations" and "does not always interpret social cues accurately."  (*Id.* at 250.)  In thirteen areas relating to interacting with others, Peters reported that Omori suffered either "no problem" or a "slight problem" in ten areas, and an "obvious problem" in three areas.  (*Id.* at 257.)  In particular, Peters opined that Omori had no problem respecting or obeying individuals in positions of authority.  (*Id.*)  She also reported that it had not been necessary to implement behavior modification strategies for Omori.  (*Id.*)  Based on the foregoing, the ALJ's decision to discount portions of Dr. Blumetti's opinion, as well as the opinion of Dr. Feldman, was legally sound and supported by substantial evidence.

Turning to the opinion of Dr. Toor that Omori should "avoid smoke, irritants, or other respiratory inhalants due to his history of asthma," (*id.* at 765), the ALJ's conclusion that asthma is not a severe impairment under the regulations and does not cause Omori any functional limitations is well supported by substantial evidence, (*id.* at 13-14, 16).  Aside from Dr. Toor's

opinion, the record is devoid of any evidence indicating that Omori's asthma diminished his capacity to work. Omori did not mention his asthma during his hearing before the ALJ and, instead, testified that his only symptoms were seizures and memory problems. (*Id.* at 46.) Further, Omori reported to Dr. Toor that he had not suffered an asthma attack in seven or eight years and no longer used an inhaler. (*Id.* at 761.) "There is no requirement that the [Commissioner] accept the opinion of a consultative examiner concerning a claimant's limitations." *Pellam v. Astrue*, 508 F. App'x 87, 89 (2d Cir. 2013). Accordingly, the court finds no reversible error with regard to the ALJ's consideration of Dr. Toor's opinion.

B. **Credibility**

Next, Omori contends that the ALJ failed to consider the appropriate factors when evaluating his credibility. (Dkt. No. 10 at 23-24.) According to Omori, the ALJ improperly relied on his completion of a two-year college program despite the fact that it took Omori nine semesters to do so. (*Id.*) The court disagrees.

Once the ALJ determines that the claimant suffers from a "medically determinable impairment[] that could reasonably be expected to produce the [symptoms] alleged," she "must evaluate the intensity and persistence

13

of those symptoms considering all of the available evidence; and, to the extent that the claimant's [subjective] contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (internal quotation marks and citations omitted). In performing this analysis, the ALJ "must consider the entire case record and give specific reasons for the weight given to the [claimant's] statements." SSR 96-7p, 61 Fed. Reg. 34,483, 34,485 (July 2, 1996). Specifically, in addition to the objective medical evidence, the ALJ must consider the following factors: "1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness, and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms." *F.S. v. Astrue*, No. 1:10-CV-444, 2012 WL 514944, at *19 (N.D.N.Y. Feb. 15, 2012) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)).

In this case, the ALJ concluded that Omori's statements with respect to the intensity, persistence, and limiting effects of his symptoms were not credible to the extent that they were inconsistent with the ability to work at all exertional levels on simple, routine, and repetitive tasks that were

14

essentially isolated with only occasional supervision and low stress, and did not exposure him to hazards or moving machinery. (Tr. at 17.) In making this determination, the ALJ considered Omori's graduation from highschool without repeating a grade, completion of a two-year college degree program in sports nutrition, and the fact that he had begun a vocational training program after failing out of his four year program. (*Id.*); *see* 20 C.F.R. § 404.1529(c)(3)(i). The ALJ also considered that Omori's seizures were well-controlled by medication, he failed to follow through with treatment for tinnitus, and he failed to seek any treatment with mental health professionals. (Tr. at 17-18); *see* 20 C.F.R. § 404.1529(c)(3)(iv)-(v). Further, the ALJ reviewed the opinion evidence of record and Omori's daily activities. (Tr. at 18-21.)

Omori complains that the ALJ failed to take into account that he was in an IEP in highschool and took nine semesters to graduate the two-year college program. (Dkt. No. 10 at 23-24.) However, these facts do not compel the conclusion that the ALJ's credibility determination was unsupported by substantial evidence. In making her credibility assessment, the ALJ not only referenced Omori's degrees, but also found that Omori's ability to prepare food, shop, shovel snow, watch television,

15

play video games, use the computer for long hours at a time, and attend a gaming club once a month was inconsistent with his allegations of disabling impairments. (Tr. at 21); *see Bonet ex rel. T.B. v. Colvin*, 423 F. App'x 58, 59 (2d. Cir. 2013) ("[W]hether there is substantial evidence supporting the appellant's view is not the question"; instead, the court must "decide whether substantial evidence supports *the ALJ's decision.*"). Further, an ALJ is not required to "have mentioned every item of testimony presented to h[er] or have explained why [s]he considered particular evidence unpersuasive or insufficient to lead h[er] to a conclusion of disability." *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983). In this case, it is clear that the ALJ considered Omori's educational records and the cognitive limitations they evinced, and determined that, although he was limited, Omori's limitations were not as severe as alleged.[9] (Tr. at 21.) This conclusion was not "patently unreasonable." *Pietrunti v. Director, Office of Workers' Comp. Programs*, 119 F.3d 1035, 1042 (2d Cir. 1997) ("Credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are patently unreasonable." (internal quotation

---

[9] The ALJ cited Omori's educational records, explicitly acknowledged that Omori received special education accommodations in both highschool and college, and noted that he failed out of his four year degree program. (Tr. at 17, 21.)

16

marks and citation omitted)).

C. **Vocational Expert Testimony**

Finally, Omori asserts that the ALJ's step five determination is unsupported by substantial evidence because the VE's opinion, which the ALJ relied on, was based on a hypothetical that failed to account for all of Omori's functional limitations. (Dkt. No. 10 at 24-25.) Specifically, he alleges that the ALJ's errors in assessing his RFC and credibility, along with a failure to explicitly include in the hypothetical question the limitations articulated by Drs. Blumetti, Feldman, and Toor, fatally undermine the step-five determination. (*Id*.) As discussed above, however, the ALJ's RFC and credibility findings were legally sound and are supported by substantial evidence. As such, the ALJ's reliance on the VE's testimony was appropriate, as the hypothetical posed was supported by the record. (Tr. at 16, 21-22, 57-58); *see Salmini v. Comm'r of Soc. Sec.*, No. 09-3642-cv, 2010 WL 1170133, at *4 (2d Cir. Mar. 25, 2010) ("Because we find no error in the ALJ's RFC assessment, we likewise conclude that the ALJ did not err in posing a hypothetical question to the [VE] that was based on that assessment.").

D. **Remaining Findings and Conclusions**

17

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

### VII.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Omori's complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

January 5, 2015
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court